UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

IRON WORKERS LOCAL 12 PENSION FUND,
by William H. Eggleston, III, and Henry Digeser
as Trustees; IRON WORKERS LOCAL 12
HEALTH INSURANCE FUND, by William H.
Eggleston, III, and Henry Digeser as Trustees;
IRON  WORKERS LOCAL 12 JOINT TRAINING
AND EDUCATION  FUND, by William H.
Eggleston, III, and Henry Digeser as Trustees; IRON
WORKERS LOCAL UNION NO. 12 AND
EMPLOYERS COOPERATIVE TRUST, by William
H. Eggleston, III, and Henry Digeser as Trustees;
IRON WORKERS DISTRICT COUNCIL OF                     1:16-CV-0625
WESTERN NEW YORK AND VICINITY PENSION               (GTS/CFH)
FUND, by Suzanne Ranelli, as Administrative Manager;
IRON WORKERS DISTRICT COUNCIL OF
WESTERN NEW YORK AND VICINITY ANNUITY
FUND, by Suzanne Ranelli, as Administrative Manager;
UPSTATE IRONWORKERS EMPLOYERS'
ASSOCIATION, INC., by Herbert L. Stephenson, as
President; and IRON WORKERS LOCAL UNIT NO. 12,
by William H. Eggleston, III, as Business Manager,

                                   Plaintiffs,

v.

STANDARD STEEL FABRICATORS, INC.; and DAVID
MEIXNER, Individually and as an Officer of Standard Steel
Fabricators, Inc.,

                                   Defendants.
_____

APPEARANCES:                                      OF COUNSEL:

BLITMAN & KING, LLP                               JENNIFER CLARK, ESQ.
  Counsel for Plaintiffs
443 North Franklin Street, Suite 300
Syracuse, New York 13204-1415

HINCKLEY, ALLEN & SNYDER LLP                    NATHAN SABOURIN,
  Counsel for Defendants                        ESQ.
30 South Pearl Street, Suite 901
Albany, New York 12207

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this labor and employment action filed by the eight above-captioned employee benefit plans ("Plaintiffs") against Standard Steel Fabricators, Inc., and David Meixner ("Defendants") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and Labor-Management Relations Act of 1947 ("LMRA"), is Plaintiffs' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 38.) For the reasons set forth below, Plaintiffs' motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiffs' Claims

Generally, liberally construed, Plaintiffs' Complaint asserts the following nine claims arising from Defendants' alleged failure to fulfill its contractual obligations to them: (1) a claim that Defendants owe a debt to the Iron Workers Local 12 Pension Fund by William H. Eggleston, III and Henry Digeser as Trustees ("Local 12 Pension Fund"), Iron Workers Local Union No. 12 and Employers Cooperative Trust by William H. Eggleston, III and Henry Digeser as Trustees ("Local 12 E.C.T."), and Iron Workers Local Union No. 12 by William H. Eggleston, III as the Business Manager ("Local 12"), pursuant to the collective bargaining agreement and 29 U.S.C. § 1132(g)(2); (2) a claim that Defendants owe a debt to the Local 12 Pension Fund, Local 12 E.C.T., and Local 12 pursuant to the collective bargaining agreement; (3) a claim that Defendants owe a debt to the Iron Workers District Council of Wester New York

2

and Vicinity Pension Fund and Iron Workers District Council of Wester New York and Vicinity Annuity Fund by Suzanne Ranelli as the Administrative Manager of both (collectively "IWCD Funds") and Upstate Ironworker Employers' Association, Inc., by Herbert L. Stephenson as President ("UIEA") pursuant to the collective bargaining agreement and 29 U.S.C. §§ 1132(g)(2), 1145; (4) a claim that Defendants owe a debt to the IWDC Funds and UIEA; (5) a demand for an audit pursuant to the Trusts and Collections Policies of the collective bargaining agreement and a judgment for any and all contributions determined by the audit to be owed to Plaintiffs; (6) a demand that, if Defendants do not produce complete and accurate records for review and audit by Plaintiffs, pursuant to the IW12 Funds' Collection Policy and IWDC Funds' Collections Policy, Plaintiffs are entitled to (a) implement a formula audit that allows them to presume employees performed a minimum of forty (40) hours per week of bargaining unit work for fifty-one (51) weeks during the calendar year, and (b) seek judgment for any and all contributions that are determined to be owed pursuant to that formula; (7) a claim that Defendant Meixner breached his fiduciary duty by withholding contributions pursuant to 29 U.S.C. § 1106; (8) a claim that Defendant Meixner violated ERISA Section 404(a) and breached his fiduciary duty by wrongful diversion and conversion of Plaintiffs' assets pursuant to §§ 1104, 1106, and 1109 of ERISA and the New York Lien Law; and (9) a demand for an injunction mandating Defendants to comply with ERISA, LMRA, the collective bargaining agreement, Trusts, and Collections Policies.  (*See generally* Dkt. No. 1 [Pls.' Compl.].)

B.     **Statement of Undisputed Material Facts**

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Plaintiffs in their Statement of Material Facts and either expressly admitted or

3

denied without an appropriate record citation by Defendants in their response thereto. (*Compare* Dkt. No. 38, Attach. 1 [Plfs.' Rule 7.1 Statement] *with* Dkt. No. 42, Attach. 1 [Defs.' Rule 7.1 Resp.].)

1. Defendant Standard Steel Fabricators, Inc. ("Defendant Standard" or "Defendant Corporation") signed a collective bargaining agreement ("CBA") with Plaintiff Iron Workers Local Union No. 12 ("Local 12" or "Plaintiff Union") on January 26, 2010.

2. Defendant David Meixner ("Defendant Meixner") is one hundred percent (100%) shareholder of Defendant Standard and is President and sole officer of Defendant Standard.

3. Defendant Meixner determined which bills of Defendant Standard to pay and when to pay those bills, and he determined whether and when Defendant Standard would pay contributions to Plaintiffs.

4. The CBA covers the work of all Union members as outlined in the Constitution of the International Bridge, Structural, Ornamental and Reinforcing Iron Workers. The Union's Constitution outlines iron workers' work as follows:

> This International Association claims for its members all work including but not limited to: the field fabrication, production and/or erection and construction of all structural iron and steel, including light metal studs, ornamental lead, bronze, brass, copper, aluminum, steel, glass, all ferrous and nonferrous metals and plastics, . . . decking, diagrams and other roofing systems, . . . barjoist, . . . collars, column casings, column cladding, column covers, . . . joist (precast, prestressed and poststressed) . . . reinforcing steel, racks, railings (including pipe), . . . stairways, including pre-engineers stairs, all types of stairs, stairing and steel supports . . .

5. The CBA requires Defendant Standard to file reports with the Iron Workers Local 12 Pension Fund ("Pension Fund"), Iron Workers Local 12 Health Insurance Fund ("Health Fund"), Iron Workers Local 12 Joint Training and Education Fund ("Training Fund"), and Iron

4

Workers Local Union No. 12 and Employers Cooperative Trust ("Local 12 ECT" or "IW12 Funds"), Iron Workers District Council of Western New York and Vicinity Pension Fund ("IWDC Pension Fund") and Iron Workers District Council of Western New York and Vicinity Annuity Fund ("IWDC Annuity Fund") (hereinafter "IWDC Funds") (collectively the six [6] entities are referred to as "Plaintiff Funds") and Plaintiff Union detailing the number of hours worked by iron workers in the Union's geographic territory.

6.      The CBA requires Defendant Standard to submit contributions to Plaintiff Funds for each hour worked by iron workers covered by the CBA.

7.      The CBA requires Defendant Standard to deduct from certain employees' wages stipulated sums for each hour worked and pay those sums to Plaintiff Union, the amounts representing work assessments/dues deductions.

8.      The Agreements, Declaration of Trust of Plaintiffs, and Collections Policies purport to bind Defendant Standard.

9.      The Trusts of Plaintiff Funds authorize the Trustees to adopt by-laws, rules, and regulations necessary to facilitate the administration of the Plaintiff Funds and the collection of Plaintiff Funds' monies.

10.     Plaintiff Funds adopted Collection Policies that purport to bind those who are bound to the Agreements and Declarations of Trust of Plaintiff Funds, specifically Defendant Standard.

11.     Under the CBA, Plaintiff Funds' Trusts, and Plaintiff Funds' Collections Policies, unpaid and withheld contributions are trust assets.

12.     The CBA, Plaintiff Funds' Trusts, and Plaintiff Funds' Collections Policies purport to require Defendants to use any monies earned by Defendant Standard to first pay contributions/trust assets to Plaintiff Funds.

13.     Defendant Standard is obligated to submit the remittance reports, the contributions and the wage deductions to Plaintiff Funds and Plaintiff Union for employees covered by the CBA, no later than the fifteenth (15th) day of the month following the month during which the hours were worked by the employees covered by the CBA.

14.     If Defendant Standard does not remit the reports and contributions and wage deductions by the thirtieth (30th) day of the month following the month during which the hours were worked by the employees covered by the CBA, its remittances for the month are considered untimely and delinquent.

15.     Depending on the length of time, if Defendant Standard does not timely remit the contributions and deductions for employees covered by the CBA, the terms of Plaintiff Funds' Trusts and Plaintiff Funds' Collections Policies purport to hold Defendant Standard liable for the delinquent contributions and deductions, plus interest, liquidated damages, audit fees and costs, attorney fees and costs at the rates set forth in Plaintiff Funds' Trusts and Collections Policies.

16.     Plaintiff Funds' Trusts, and Plaintiff Funds' Collections Policies purport to obligate Defendant Standard to produce its books and records for a payroll audit upon request.

17.     Plaintiffs seek relief from Defendant Standard for all audit fees, attorneys' fees and costs they incurred in obtaining their records for an audit and collecting any delinquency.

18.     During the period 2010 to July 1, 2016, Defendant Standard employed individuals who qualify as iron workers pursuant to the Constitution of the International Bridge, Structural,

Ornamental and Reinforcing Iron Workers, and thus would be covered by the CBA to the extent it was binding on Defendants.

19.     Defendant Standard remitted contributions and deductions to Plaintiff IW12 Funds and IWDC Funds.

20.     Plaintiffs incurred audit fees, attorneys' fees and costs in pursuing audits of Defendant Standard's records.

21.     Defendant Standard performed work after November 2016.

22.     Plaintiffs asked Defendants to produce their records for a payroll audit covering the period November 19, 2016, to date, and Defendants were directed by the Court to produce those records. (Dkt Nos. 35, 37.)

### C.     Parties' Briefing on Plaintiffs' Motion for Summary Judgment

#### 1.     Plaintiffs' Memorandum of Law

In their motion for summary judgment, Plaintiffs assert five arguments. (Dkt. No. 38 Attach. 2 [Pls.' Mem. of Law].)  First, Plaintiffs argue that they are entitled to a final judgment for the known debt pursuant to Fed. R. Civ. P. 54(b).  (*Id*. at 3-4.)  Specifically, Plaintiffs request that the Court enter a final judgment for the known delinquency because Defendants' violation of their obligations have reduced Plaintiffs' income, and a delay in enforcing Plaintiffs' claim may result in the debt being uncollectible. (*Id*.) Also, Plaintiffs argue that the Court should direct Defendants to produce records for a payroll audit and Plaintiffs should be permitted to seek an additional judgment if the audit reveals that additional debt is owed to Plaintiffs. (*Id*.)

Second, Plaintiffs argue they are entitled to summary judgment pursuant to Fed. R. Civ. P. 56(c), and there are no valid defenses to the action. (*Id*. at 5.) Plaintiffs argue they are entitled

to judgment under ERISA in the amount of $371,356.95, because the employer benefit plan is entitled to recover the contributions, interest, liquidated damages, attorneys' fees and costs. (*Id.*) Also, Plaintiffs argue that, in the alternative, Plaintiffs are entitled to judgment against Defendant Corporation in the amount of $171,792.05, plus audit fees and attorneys' fees and costs, pursuant to the LMRA. (*Id.* at 10.)

Third, Plaintiffs argue they are entitled to entry of judgment against Defendant Meixner in the amount of $173,078.10. (*Id.* at 16.) Specifically, Plaintiffs argue that Defendant Meixner is liable for the unpaid contributions, interest, attorneys' fees, audit fees and costs because he is a fiduciary pursuant to ERISA. (*Id.* at 18-21.) Plaintiffs argue that Defendant Meixner caused them to expend plan assets when he breached his fiduciary duty by failing to remit contributions. (*Id.*)

Fourth, Plaintiffs request an order from the Court directing Defendants to produce their records for an audit. (*Id.* at 21-23.) Plaintiffs argue that it is proper for the Court to issue such an order compelling an audit under both ERISA and LMRA. (*Id.*) Here, Plaintiffs argue that U.S. Magistrate Judge Christian F. Hummel already ordered production of Defendants' records but Defendants have refused to comply with that Order. (*Id.*)

Fifth, Plaintiffs argue that the Court must dismiss Defendants' affirmative defenses and counterclaim. (*Id.* at 23.) Specifically, Plaintiffs argue the defense of waiver must fail because Defendants cannot meet their burden of showing that Plaintiffs intentionally abandoned a known right. (*Id.*) Plaintiffs also argue that the duty to mitigate damages is not a defense to an ERISA action to collection contributions. (*Id.* at 23-24.) Moreover, Plaintiffs argue that the defense of unclean hands is inapplicable because this action sounds in equity and Defendants cannot show unconscionable behavior by Plaintiffs. (*Id.* at 24.) Finally, Plaintiffs argue that employees do not need to claim benefits for the Funds to recover contributions. (*Id.* at 24.)

## 2.      Defendants' Opposition Memorandum of Law

Generally, in opposition to Plaintiffs' motion, Defendants assert three arguments. (Dkt. No. 42 [Defs.' Opp'n Mem. of Law].) First, Defendants argue that the CBA and Working Agreement must be construed according to their plain terms. (*Id*. at 2.)  Specifically, Defendants argue there is a distinction between "shop" work and "field" work that Plaintiffs do not acknowledge in their moving papers. (*Id*. at 3.) Therefore, Defendants argue that there is a genuine dispute of material fact regarding the type of work that should have been included in the contribution calculations.

Second, Defendants argue that Plaintiffs waived the right to collect payments for certain time periods when they entered into written agreements agreeing to such waiver. (*Id*. at 4-5.) Specifically, Defendants argue that Plaintiffs knowingly accepted payment as full and complete satisfaction of any monies due from Defendants for contributions or deductions for (a) the time period through the end of 2011, and (b) the time period January 2014 through June 2014. (*Id*.) Defendants argue that now Plaintiffs are seeking to hold Defendants liable for allegedly unpaid contributions and deductions from 2010 to date, including the waived time periods. (*Id*.)

Third, Defendants argue there is a genuine dispute of material fact regarding how much money is owed, if any. (*Id*. at 5-6.) Specifically, they argue that Plaintiffs' calculations include time periods regarding which they waived their right to collect and contributions for individuals who are not covered by the CBA. (*Id*.)  Moreover, Defendants argue that there are genuine disputes of material fact concerning the audits performed on behalf of Plaintiffs and upon which Plaintiffs' damage claim is based.  (*Id.*)  Defendants argue that there is no explanation as to why Plaintiffs and Defendants came up with such different conclusions after auditing the same documents. (*Id*.)

### 3.    Plaintiffs' Reply Memorandum of Law

Generally, in reply to Defendants' opposition, Plaintiffs assert four arguments. (Dkt. No. 44 [Plfs.' Reply Mem. of Law].) First, Plaintiffs argue that Defendant Corporation adopted the CBA by complying with its terms and enjoying its benefits. (*Id*. at 1-2.) Specifically, Plaintiffs argue that, because Defendant Corporation operated by the terms and conditions embodied in the CBA and realized the benefits of the CBA, Defendant Corporation adopted the CBA. (*Id*.) Therefore, Plaintiffs request that the Court find that Defendant Corporation is a party to the CBA and is obligated to remit contributions for iron workers in the shop and field. (*Id*.)

Second, Plaintiffs argue that the CBA covers all employees who work in the shop and the field regardless of union membership. (*Id*. at 3-5.) Specifically, Plaintiffs argue the CBA should be interpreted using traditional rules of contract interpretation. (*Id*.) Plaintiffs argue that a fair reading of the CBA in its entirety reveals no ambiguity, shows that all employees who perform iron workers' work are covered, and reveals no distinction between shop and field workers. (*Id*.) Therefore, Defendants must remit contributions to Plaintiffs on behalf of all employees performing iron workers' work (both union and non-union employees), and employees working both in the shop and field.  (*Id.*)

Third, Plaintiffs argue that waiver and accord, as well as satisfaction, are not defenses to this action. (*Id*. at 6.) Plaintiffs argue that, because they did not know about Defendants' debt until they conducted a payroll audit, they did not waive a known right in the payment agreements. (*Id*.) Moreover, Plaintiffs argue that the documents provided by Defendants do not show an accord and satisfaction.  Similarly, Plaintiffs argue that Defendants did not provide any evidence that the Union was authorized to settle the IWDC Funds and UIEA's claims. (*Id*. at 8.) Therefore, Plaintiffs argue that Defendants did not meet their burden of proof to establish an accord and satisfaction. (*Id*. at 9.)

Fourth, Plaintiffs argue the CBA was not terminated by the Union's Withdrawal of Labor on July 1, 2016. (*Id.* at 9-10.) Plaintiffs argue that, because Defendants were not relieved of their obligations under the CBA, Plaintiffs are entitled to an audit. (*Id.*)

## II.     GOVERNING LEGAL STANDARDS

### A.     Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[1] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Id.* at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a),(c),(e).

-------

[1]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.  Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.  2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[1]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[2]  Stated another way, when a non-movant fails to oppose a legal argument

---

[1]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[2]     *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by

asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

Moreover, the "principles governing admissibility of evidence do not change on a motion for summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment," and a "district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009).

### B. Standards Governing Plaintiffs' Claims and Defendants' Defenses

Because the parties have (in their memoranda of law) demonstrated an accurate understanding of the legal standards governing Plaintiffs' claims and Defendants' defenses in this action, the Court will not recite those legal standards in their entirety in this Decision and Order, which is intended primarily for review by the parties. (*See generally* Dkt. No. 38 Attach. 2 [Plfs.' Mem. of Law]; Dkt. No. 42 [Defs.' Opp'n Mem. of Law]; Dkt. No. 44 [Plfs.' Reply

---

plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

Mem. of Law].)  Instead, the Court will merely focus on certain portions of those standards

where necessary below in Part III of this Decision and Order.

III.    ANALYSIS

A.    Whether Plaintiffs Are Entitled to Final Judgment for the Known
Delinquency Pursuant to Fed. R. Civ. P. 54(b)

After carefully considering the matter, the Court denies Plaintiffs' motion for final

judgment for the known delinquency pursuant to Fed. R. Civ. P. 54(b) for the reasons stated in

Defendants' opposition memorandum of law.  (Dkt. No. 42 [Defs.' Opp'n Mem. of Law].)  To

those reasons, the Court adds the following analysis, which is intended to supplement but not

supplant Defendants' arguments.

As a threshold matter, the Court finds that a final judgment would be inappropriate where

liability has not been established.  *See, e.g. Credit Francais Int'l, S.A. v. Bio-Vita, Ltd.,* 78 F.3d

698, 706 (1st Cir. 1996) (recognizing that the threshold inquiry in a Fed. R. Civ. P. 54(b)

analysis is determining "whether the trial court action underlying the judgment *disposed of all*

*the rights and liabilities* of at least one party as to at least one claim") (emphasis added).  In any

event, Plaintiffs argue that they are entitled to final judgment for a known delinquency but do not

state the amount they are seeking.  (Dkt. No. 38, Attach. 2, at 10-11.)  The Court infers that

Plaintiffs are relying on the audit of Ben Catanzaro in support of their request, though Plaintiffs

memoranda of law do not explicitly state this.  (*See generally* Dkt. No. 38, Attach. 8.)  Mr.

Catanzaro determined that Defendant Corporation owes $348,414.36, to all Plaintiffs for the

period January 1, 2014, through November 18, 2016.  (*Id.* at 13-14.)  In addition, Mr. Catanzaro

determined that Defendant Meixner owes $170,257.11, to IWDC Funds and IW12 Funds for the

period January 1, 2014, through November 18, 2016.  (*Id.* at 14.)

14

Under the circumstances, the proper question before the Court is whether there remains a factual dispute as to the contributions owed to the Funds. For the reasons stated below, the Court finds that there remain material issues of fact regarding the contributions, if any, owed to Plaintiffs.

## 1.     Employees to Be Considered Pursuant to the CBA

Whether a contract is ambiguous is a question of law. *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir. 1998). Unless the court gleans some ambiguity from looking at the face of the contract, it will not look beyond the contract's four corners. *Am. Home Prods. Corp. v. Liberty Mut. Ins. Co.*, 748 F.2d 760, 765 (2d Cir. 1984); *see also Rosenblatt v. Christie, Manson & Woods Ltd.*, 195 F. App'x 11, 12 (2d Cir. 2006). A contract provision is ambiguous "'when it is reasonably susceptible to more than one reading.'" *Haber*, 137 F.3d at 695 (quoting *United States Fire Ins. Co. v. General Reins. Corp.*, 949 F.2d 569, 572 [2d Cir. 1991]). The court gives unambiguous contract terms their plain meaning. *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 139 (2d Cir. 2000); *see also Rosenblatt*, 195 F. App'x at 12.

The relevant portions of the work subject to the CBA is set forth in the Constitution of the International Bridge, Structural, Ornamental and Reinforcing Iron Workers (the "Constitution"), as discussed above in Part I.B. ¶ 4 of this Decision and Order. (Dkt. No. 38, Attach. 4, at 233-236.) The terms of the Constitution are ambiguous because, while the terms are broad (i.e., "all work including but not limited to"), the terms are also limited "to the *field* fabrication, production, and/or erection of all structural iron and steel . . . ." (emphasis added). (*Id.* at 233.) Moreover, Defendants assert that it was their practice to not remit contributions for employees who worked only doing shop work. (Dkt. No. 42, Attach. 2, at ¶¶ 12-15.) However,

Plaintiffs assert that Defendants previously remitted contributions for hours worked by employees in the shop. (Dkt. No. 44, Attach. 3, ¶ 5; Dkt. No. 44, Attach. 5, at ¶¶ 4-5; Dkt. No. 44, Attach. 6, at ¶¶ 5-6.) Accordingly, the CBA is susceptible to more than one meaning and it is not clear whether employees doing solely "shop" work must be included for purposes of calculated the contributions for which Defendants are responsible.

The Court is unable to resolve this ambiguity and dispute of interpretation on the motion currently pending before it.

### 2.    Evidence of Plaintiffs' Waiver to Collect Payments for Certain Time Periods

Defendants presented evidence that the parties previously worked out agreements, sometimes written and sometimes not, pursuant to which Plaintiffs continued to provide workers and Defendant Corporation agreed to remit payments in accordance with a schedule. (Dkt. No. 42, Attach. 2, at ¶ 16.) Defendants argue that on July 24, 2012, Defendant Corporation and Plaintiffs entered a written agreement pursuant to which Plaintiffs agreed to accept $51,077.05, from Defendant Corporation as full and complete satisfaction of any monies then due from Defendant Corporation for contributions or deductions for the period through the end of 2011. (*Id.* at ¶ 19; Dkt. No. 42, Attach. 3.) Defendants argue that Defendant Corporation satisfied its payment obligations under the written agreement between the parties dated July 24, 2012. (Dkt. No. 42, Attach. 2, at ¶ 28.)

In addition, Defendants argue that on December 19, 2014, Defendant Corporation and Plaintiffs entered into another written agreement pursuant to which Plaintiffs agreed to accept payment of $31,269.24, from Defendant Corporation as full and complete satisfaction of any monies then due from Defendant Corporation for contributions or deductions for the time period

January 2014 through June 2014. (*Id.* at ¶ 29; Dkt. No. 42, Attach. 4.) As a result, Defendants argue that Defendant Corporation satisfied its payment obligations under the written agreement between the parties, dated December 19, 2014. (Dkt. No. 42, Attach. 2, at ¶ 30.)

The testimony from Defendant Meixner and attached documents a genuine dispute of material fact regarding the amount, if any, of delinquency owed to Plaintiffs because moneys owed for certain time periods may need to be excluded from the calculation of that amount.

### 3.    Conflicting Audit Results

Despite reviewing the same records, Plaintiffs' auditors and Defendant Meixner derived different number of total hours worked and payments remitted by Defendant Corporation for various years. (Dkt. No. 42, Attach. 2, at ¶¶ 32-49.) There is no explanation provided to the Court for these discrepancies except Defendant Meixner's surmise that it is because Plaintiffs' audit includes hours for individuals who performed solely "shop" work, which according to Defendants, should not have been included in the audit. (*Id.*) As set forth above in Part III.A.1. of this Decision and Order, whether individuals who perform solely "shop" work are to be included for purposes of calculating the contributions owed by Defendants pursuant to the CBA is a genuine dispute of material fact that the Court is unable to resolve on this motion. Similarly, the Court is unable to resolve the differences between the results from Defendant Meixner's review of the records and the results from Plaintiffs' auditor's review of the records.

Therefore, the Court finds that a genuine dispute of material fact exists regarding the number of hours for which Defendants owed contributions and deductions. This fact is material because it determines whether Defendants are delinquent and if so, how much is owed. *Del Turco v. Speedwell Design*, 623 F. Supp. 2d 319, 347 (E.D.N.Y. 2009) (denying summary

judgment as to damages because "the audit does not establish undisputed facts as to the contributions owed to the Funds . . . [and] evidence presented by the defendants raises disputes of material fact as to the auditors' calculations of the amount of covered work performed in the geographical area"); *see also Morin v. Spectrum Contracting Grp., Inc.*, 08-CV-3567, 2011 WL 1323005, at *4 (E.D.N.Y. Jan. 13, 2011), *adopted*, 2011 WL 1253232 (E.D.N.Y. Mar. 28, 2011) (denying summary judgment as to damages because there was a genuine issue of material fact as to the amount of contributions owed to the Funds).

For these reasons, the Court denies Plaintiffs' motion for judgment for the known debt pursuant to Fed. R. Civ. P. 54(b).

**B.      Whether Plaintiffs Are Entitled to Summary Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 56**

After carefully considering the matter, the Court denies Plaintiffs' motion for summary judgment pursuant to Fed. R. Civ. P. 56 for the reasons stated in Defendants' opposition memorandum of law.  (Dkt. No. 42 [Defs.' Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Defendants' arguments.

Plaintiffs argue that "[t]he Court must award interest, liquidated damages, attorneys' fees and costs if the contributions are unpaid at the time the lawsuit is commenced or if delinquencies arise after commencement of the lawsuit."  (Dkt. No. 32, Attach. 2, at 12-13.)  However, Plaintiffs' entire argument depends on the Court ruling as a matter of law that there were unpaid contributions at the time the lawsuit was commenced or that arose after the lawsuit commenced. As set forth above in Part III.A. of this Decision and Order, there are genuine disputes of material fact with regard to whether and, if so, the extent to which, Defendants have been delinquent in their remission of contributions.

For these reasons, the Court denies Plaintiffs' motion for summary judgment pursuant to Fed. R. Civ. P. 56.

### C. Whether Plaintiff Is Entitled to Entry of Judgment Against Defendant Meixner in the Amount of $173,078.10

After carefully considering the matter, the Court denies Plaintiffs' motion for judgment against Defendant Meixner in the amount of $173,078.10, for the reasons stated in Defendants' opposition memorandum of law. (Dkt. No. 42 [Defs.' Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis, which is inteded to supplement but not supplant Defendants' arguments.

Plaintiffs argue that Defendant Meixner is liable for the unpaid contributions, interest, attorneys' fees, audit fees, and costs. (Dkt. No. 32, Attach. 2, at 23-28.) Again, Plaintiffs' argument depends on the Court's finding that there are unpaid contributions, which thus could accrue interest, and result in Defendants' liability for attorneys' fees, audit fees, and costs. As set forth above in Part III.A. of this Decision and Order, there are genuine disputes of material fact with regard to whether and, if so, the extent to which, Defendants have been delinquent with regard to their remitting of contributions.

For these reasons, the Court denies Plaintiffs' motion for entry of judgment against Defendant Meixner in the amount of $173,078.10.

### D. Whether Plaintiffs Are Entitled to an Order Directing Defendants to Produce Their Records for a Payroll Audit

After carefully considering the matter, the Court grants Plaintiffs' motion for an order directing Defendants to produce their records for a payroll audit for the reasons stated in Plaintiffs' memoranda of law. (Dkt. No. 38, Attach. 2 [Pls.' Mem. of Law]; Dkt. No. 44 [Pls.'

Reply Mem. of Law].)  To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Plaintiffs' arguments.

In their opposition memorandum of law, Defendants do not address this portion of Plaintiffs' motion.  In addition, Plaintiffs support their argument with citations to legal authority and record evidence.  (*See, e.g.,* Dkt. No. 38, Attach. 3, at ¶¶ 52-53 [citing IW12 Funds Trust Dkt. No. 38, Attach. 4, at 12, 26, 46, 60, 77, 98; IW12 Funds' Collections Policy Dkt. No. 38, Attach. 4, at 250-51, 264-66, 277-78, 299-300, 316-17, 338-40]; Dkt. No. 38, Attach. 5, at ¶¶ 36-37 [citing the IWDC Funds Trust Dkt. No. 38, Attach. 6, at 24, 79; IWDC Funds' Collections Policy Dkt. No. 38, Attach. 7, at 6-7, 28-30, 47-48, 69-71].)

For these reasons, the Court orders Defendants to produce their records for a payroll audit subsequent to November 18, 2016.

### E. Whether Defendants' Affirmative Defenses and Counterclaim Must be Dismissed

After carefully considering the matter, the Court denies Plaintiffs' motion for dismissal of Defendants' affirmative defenses for the reasons stated in Defendants' opposition memorandum of law.  (Dkt. No. 42 [Defs.' Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Defendants' arguments.

"[C]ourts have recognized that affirmative defenses . . . which focus on the actions of the Funds as opposed to the formation and enforcement of the CBA, may not be foreclosed under [ERISA] section 515."  *Trs. of Local 813 Ins. Trust Fund v. Wilner's Livery Serv., Inc*., 11-CV-3180, 2012 WL 4327070, at *6 (E.D.N.Y. Sept. 19, 2012) (refusing to strike affirmative defenses based on the doctrines of laches, equitable estoppel, unclean hands, the contention that Plaintiffs' damages are the result of their own conduct and misconduct, and the contention that Plaintiffs'

damages are the result of their own actions or inaction); *see also Alston v. 1749-1753 First Ave. Garage Corp.*, 12-CV-2676, 2013 WL 3340484, at *4 (E.D.N.Y. July 2, 2013) ("[L]aches is recognized as an applicable defense in delinquent contribution cases under Section 515 of ERISA, codified at 29 U.S.C. § 1145.").

### 1.    Defense of Waiver

Plaintiffs argue that Defendants' defense of waiver must be dismissed because they cannot show that Plaintiffs intentionally abandoned a known right.

However, "the intent to waive is usually a question of fact" for the jury. *Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 585 (2d Cir. 2006) (citing *Jefpaul Garage Corp. v. Presbyterian Hosp. in City of New York*, 61 N.Y.2d 442, 448 [N.Y. 1984]); *see also Champion Spark Plug Co. v. Automobile Sundries Co.*, 273 F. 74 (2d Cir. 1921) ("So much depends upon the intention of the parties that, where such intent is disputed, it necessarily becomes a question for the determination of a jury."). Based on the record before the Court, the Court finds that a genuine dispute of material fact exists with regard to this defense.

Therefore, the Court denies Plaintiffs' motion to dismiss the defense of waiver.

### 2.    Defense that Plaintiffs Had a Duty to Mitigate

The Court is similarly not persuaded by Plaintiffs' argument that Defendants' affirmative defense of failure to mitigate should be dismissed.

"While there is some case law that suggests failure to mitigate would be unavailable as a defense in an ERISA action, the issue is not settled." *In re Beacon Assoc. Litig.*, 09-CV-0777, 2011 WL 3586129, at *5 (S.D.N.Y. Aug. 11, 2011) (denying a motion to dismiss the defense of failure to mitigate without the benefit of discovery) (collecting cases); *see also Cent. New York*

*Laborers' Health by Moro v. Fahs Constr. Grp., Inc.,* 13-CV-0226, 2017 WL 5160119, at *6 (N.D.N.Y. Apr. 5, 2017) (Hurd, J.) (granting a motion to amend and finding that such amendment would not be futile where defendant sought to amend its answer to include the defense of failure to mitigate in a delinquent contribution case pursuant to ERISA); *Trs. of Local 813 Ins. Trust Fund,* 2012 WL 4327070, at *6 (refusing to dismiss defenses that "Plaintiffs' damages are the result of their own conduct and/or misconduct . . . and . . . Plaintiffs' damages are the result of their own actions and/or inaction."). Neither party has discussed and analyzed the facts, or lack thereof, supporting this defense. Thus, it is impossible at this juncture for the Court to determine the defense's applicability in this case.

The Court notes that, to the extent the doctrine of mitigation applies in the ERISA context, it "would apply at most to the determination of damages, and not to liability." *Md. Elec. Indus. Health Fund v. Mesco, Inc.*, 12-CV-0505, 2014 U.S. Dist. LEXIS 25702, at *33 (D. Md. Feb. 28, 2014) (citing *Womack v. Orchids Paper Prods. Co. 401(K) Sav. Plan*, 769 F. Supp. 2d 1322, 1336 [N.D. Okla. 2011]; *Cent. Laborers' Pension Fund Bd. of Trs. v. Mike. Fasula Concrete Const., Inc.*, 2011 U.S. Dist. LEXIS 145807, at *5 [N.D. Ill. Dec. 19, 2011]).

### 3. Defense of Unclean Hands

The doctrine of unclean hands is a recognized defense in delinquent contribution cases pursuant to ERISA. *Trs. of Local 813 Ins. Trust Fund,* 2012 WL 4327070, at *6. Moreover,

> The guiding doctrine in [an unclean hands] case is the equitable maxim that 'he who comes into equity must come with clean hands.' . . . . This maxim necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is 'not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.' . . . Accordingly one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor.

*Precision Instrument Mfg. Co. v. Auto. Maint. Machinery Co.*, 324 U.S. 806, 814-15 (1945) (citations omitted).

Here, there is admissible evidence before the Court that Plaintiffs' motion claims damages for inappropriate time periods during which, Plaintiffs have expressly waived any right to obtain contributions owed by Defendants.  (Dkt. No. 42, Attachs. 3, 4.)  Moreover, Defendants have adduced admissible evidence that, based on their calculations, Defendants actually overpaid Plaintiffs by approximately 1,117.5 hours for 2014 and 2015.  (Dkt. No. 42, Attach. 2, at ¶ 43.) This evidence creates genuine disputes of material fact regarding whether Plaintiffs have unclean hands in this matter.

### 4. Defense that Funds Cannot Recover Contributions if Employee Had No Colorable Claim to Benefits

Plaintiffs seek dismissal of Defendants' affirmative defense that the employees for whom contributions are sought have no colorable claims for benefits from Plaintiffs' Funds.  The crux of the disagreement between Plaintiffs and Defendants is whether Defendants must remit contributions for employees who work solely doing "shop" work pursuant to the CBA.

"'Although a variety of contract defenses would not preclude [plaintiffs] from enforcing their right to collect payments pursuant to the collective bargaining agreement, [they] are not allowed to enforce a nonexistent contractual obligation.'"  *DeVito v. Hempstead China Shop, Inc.* 38 F.3d 651, 653-54 (2d Cir. 1994) (quoting *Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 138 [3d Cir. 1993]).

As set forth above in Part III.A.1. of this Decision and Order, on this motion for summary judgment, the Court is unable to determine whether employees who do solely "shop" work are

included for purposes of calculating the contributions Defendants must remit pursuant to the CBA.  Accordingly, while this affirmative defense "appear[s] aimed at negating an element of Plaintiffs' claim, [and is] better treated as [a] specific denial[], [its] inclusion should be not prejudicial to Plaintiffs."  *Trs. of Local 813 Ins. Trust Fund,* 2012 WL 4327070, at *5 (citing *Ellis v. Cygnus Enters., LLC,* 11-CV-711, 2012 WL 259913, at *4 [E.D.N.Y. Jan. 3, 2012] ["[C]ourts do no generally strike material in an answer for the reason that it is not technically an affirmative defense, so long as no prejudice results."); *In re Beacon Assoc. Litig.*, 2011 WL 3586129, at *2 [concluding that despite party's improper pleading as an affirmative defense, its inclusion and treatment as a specific denial is not prejudicial, as it will in no way expand the scope of discovery or complexity of issues at trial]).

For all of these reasons, Plaintiffs' motion seeking the dismissal of this affirmative defense, and all of Defendants' affirmative defenses, is denied.

Finally, the Court notes that, should Plaintiffs ultimately prevail in this action and seek attorneys' fees from Defendants, Plaintiffs should pay particular attention to why they should recover any fees with regard to their first, second, third, and fifth arguments in this motion, which were so without merit as to border on being frivolous.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiffs' motion for summary judgment (Dkt. No. 38) is **<u>DENIED</u> in part** and **<u>GRANTED</u> in part** in the following respects:

(1) Plaintiffs' motion seeking a final judgment for the known debt is **<u>DENIED</u>**;

(2) Plaintiffs' motion for summary judgment as matter of law is **<u>DENIED</u>**;

(3) Plaintiffs' motion for entry of judgment against Defendant Meixner in the amount of $173,078.10 is **<u>DENIED</u>**;

(4) Plaintiffs' motion for an order directing Defendants to produce their records for an audit is **<u>GRANTED</u>**, and Defendants are directed to produce their records as set forth in this Decision and Order no later than **NOVEMBER 1, 2018**; and

(5) Plaintiffs' motion to dismiss Defendants' affirmative defenses is **<u>DENIED</u>**; and it is further

**ORDERED** that counsel are directed to appear on **JANUARY 3, 2019** at 11:00 a.m. in chambers for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, a bench trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to defendants no later than **DECEMBER 3, 2018**, and the parties are directed to engage in meaningful settlement negotiations prior to the conference. In the event that counsel feel settlement is unlikely, counsel may request to participate via telephone conference for the limited purpose of scheduling a trial date by electronically filing a letter request at least one week prior to the scheduled conference.

Dated: September 21, 2018
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge